UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIORGIO FOGY on behalf of himself and all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>BPREP VANTAGE POINTE LLC, a Delaware Limited Liability Company, BROOKFIELD PROPERTIES MULTIFAMILY LLC, a Delaware Limited Liability Company, and DOES 1-100,<br><br>                                    Defendants. | Case No.:  25-CV-622 TWR (VET)<br><br>**ORDER (1) PRELIMINARILY APPROVING SETTLEMENT, (2) APPROVING OF CLASS NOTICE, (3) CONDITIONALLY CERTIFYING THE SETTLEMENT CLASSES, AND (4) SETTING FINAL APPROVAL HEARING**<br><br>(ECF No. 20) |

Presently before the Court is Plaintiff Giorgio Fogy's Unopposed Motion for Preliminary Approval of the Class Action Settlement.  (ECF No. 20 ("Mot.").)  The Court took the Motion under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).  (ECF No. 21.)  After carefully considering Plaintiff's Motion, the declarations filed in support of the Motion, the Settlement Agreement, and the relevant law, the Court **GRANTS** the Motion, **PRELIMINARILY APPROVES** the Settlement, **CONDITIONALLY CERTIFIES** the Settlement Classes, **APPROVES** of Class Notice, and **SETS** a Fairness Hearing for Final Approval of the Settlement Agreement.

1

## FACTUAL BACKGROUND

**I.    Plaintiff's Claims**

This action arises from Plaintiff Giorgio Fogy's tenancy at Vantage Pointe, a 679-unit apartment building located at 1281 Ninth Ave, San Diego, CA 92101.  (*See* Mot. at 1.)  "Plaintiff entered into a lease agreement with Defendants on February 24, 2025, and lived at Vantage Pointe from February 27, 2024, to May 15, 2025." (*Id.*)  Plaintiff alleges he and members of the Settlement Class "experienced multiple and frequent water and hot water outages and shutoffs and elevator outages and shutoffs." (*Id.*)  Plaintiff alleges the hot water outages "were particularly frequent and persistent in the months of November 2024 to February 2025." (*Id.* at 2.)  Plaintiff sued "for breach of contract, breach of the implied warranty of habitability, breach of the implied covenant of quiet enjoyment, private nuisance, negligence, and violation of California's Business & Professions Code sections 17200, et seq." (*Id.*)

**II.    Litigation and Settlement**

Plaintiff filed this action on February 10, 2025, and Defendants removed this action to this Court on March 14, 2025.  (*See* Mot. at 1.)  On April 30, 2025, the Parties participated in an early neutral evaluation conference that did not result in settlement, so the Parties proceeded with discovery.  (*See* ECF No. 20-1 ("Suhr Decl.") ¶ 7.)  Defendants produced over "14,000 pages of documents" in response to Plaintiff's discovery requests. (*See* Mot. at 2.)  Plaintiff's counsel also "took the deposition of Jose Macias, Brookfield's Regional Engineer, and conducted a witness interview of the former Maintenance Manager at Vantage Pointe (the highest-ranking on-site maintenance employee), Antonio Herrera." (*Id.*)

On December 11, 2025, the Parties participated in a 12-hour mediation, before Scott Markus of Signature Resolutions.  (*See id.*)  The mediation "ended in a mediator's proposal—rendered by Mr. Markus after hearing detailed analysis of the case from the parties—that both parties accepted." (*Id.* at 3.)  This mediator's proposal resulted in the Settlement Agreement.  (*See id.*)

25-CV-622 TWR (VET)

**III.    The Proposed Classes**

The Settlement proposes the following two classes:

1.    The Settlement Class: All Tenants who resided at Vantage Pointe at any time between February 10, 2021, and the date of Preliminary Approval.

2.    The Winter 24-25 Subclass: All Tenants who resided at Vantage Pointe at any time between November 1, 2024, to February 28, 2025.

(*See* ECF No. 20-2 ("Settlement Agreement") ¶¶ 2.3, 2.4.)  The Settlement Class includes the Winter 24-25 Subclass.  (*Id.* ¶ 2.4.)  Both the Settlement Class and the Winter 24-25 Subclass exclude the Released Parties: "Defendants, together with each of their respective affiliates, agents, employees, officers, directors, parents, subsidiaries, attorneys, representatives, advisors, administrators, predecessors, successors, insurers, accountants, advisors, or anyone acting on their behalf."  (*Id.* ¶ 2.31.)

**IV.    The Proposed Settlement Agreement**

The Proposed Settlement Agreement "provides that Defendants will pay $2,495,000 (the "Settlement Fund") to the Settlement Class, with no reversion to Defendants."  (Mot. at 3.)  "Of that amount, $1,555,000 (or 62.3%) is apportioned to the Settlement Class, and $940,000 (or 37.7%) is apportioned to the Winter 24-25 Subclass."  (*Id.*)  "Prior to disbursement to the Settlement Class, the Settlement Fund will be used to pay (1) a service award to Plaintiff of no more than $10,000.00; (2) Class Counsel's attorneys' fees award not to exceed 30% of the Settlement Fund; (3) Class Counsel's actual costs, currently estimated at $11,018.36; and (4) the Settlement Administrator's fee, not to exceed $20,000.00."  (*Id.* at 4.)

**PRELIMINARY APPROVAL OF SETTLEMENT**

**I.    Legal Standard**

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  "[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned."  *Class Pls. v. City of Seattle*, 955 F.2d

1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). The Court's review of the settlement is meant to be "extremely limited," and the Court should consider the settlement as a whole. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

For approval of a class settlement, the Court determines whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement is "fair, reasonable, and adequate," courts should consider whether: (1) the class representatives and class counsel have adequately represented the class; (2) whether the proposal was negotiated at arm's length; (3) whether the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, and (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (4) if the proposal treats class members equitably relative to each other. *See id.* Additionally, courts may still refer to the other factors commonly used in the Ninth Circuit: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *See In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025). Because not all of the final approval factors can be fully assessed at the preliminary approval stage, however, courts should focus on whether the proposed settlement (1) appears to be the product of serious, informed, non-collusive negotiations; (2) falls within the range of possible approval; (3) has no obvious deficiencies; and (4) does not improperly grant preferential treatment to class

25-CV-622 TWR (VET)

representatives or segments of the class.  *See Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 119 (D. Ariz. 2022).

"Additionally, when (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'"  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citation omitted).  "The reason for more exacting review of class settlements reached before formal class certification is to ensure that class representatives and their counsel do not secure a disproportionate benefit 'at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'"  *Id.* (citation omitted).

## II.    Analysis

### A.    *Serious, Informed, and Non-Collusive Negotiations*

This settlement is the product of a 12-hour mediation and the resulting mediator's proposal.  (*See* Mot. at 2.)  Plaintiff's counsel states that substantial discovery and fact investigation occurred prior to the mediation and that the mediation was a detailed discussion of the "facts of the Action, issues of certifiability, merits issues, and damages issues."  (*Id.* at 11.)  In terms of discovery, Defendants produced over "14,000 pages of documents" in response to Plaintiff's discovery requests.  (*See id.* at 2.)  These documents included "invoices, work orders, vendor work descriptions, internal emails, emails to tenants, and email and maintenance portal complaints from tenants spanning back to the beginning of the Class Period."  (Suhr Decl. ¶ 8.)  Plaintiff's counsel, with the help of document reviewers, examined these documents and used them to create a "comprehensive and detailed spreadsheet that outlined the scope and duration of alleged hot water disruptions at Vantage Pointe for the entirety of the Class Period."  (*Id.*)  Plaintiff's counsel also "took the deposition of Jose Macias, Brookfield's Regional Engineer, and conducted a witness interview of the former Maintenance Manager at Vantage Pointe (the highest-ranking on-site maintenance employee), Antonio Herrera."  (*Id.*)  Plaintiff's counsel represents that by the date of the mediation, "fact discovery was already substantially completed" and he had been able to largely construct "a timeline of

shutoffs and outages at Vantage Pointe and find proof of the scope and duration of those shutoffs and outages." (*Id.* at ¶ 10.) Because pre-settlement discovery covered the key facts of the case and the Settlement Agreement was negotiated by a neutral mediator, the Court preliminarily finds the Parties' negotiations were serious, well-informed, and negotiated at arm's length.

### B.     Range of Possible Approval

To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080. Under the Settlement Agreement, Defendants will pay $2,495,000, with 62.3% of the Net Settlement Fund going to the Settlement Class, and 37.7% of the Net Settlement Fund going to the Winter 24-25 Subclass. Class Counsel represents that the Settlement Fund "is somewhere between 13% and 31% of the potential recovery" based on Plaintiff's damages calculations, but even higher based on Defendant's arguments. (Mot. at 17.) Specifically, the lower end of Plaintiff's damages calculations represents one day of rent for each day when an outage occurred, but Defendants would argue that this measure is too high because an apartment is not worth $0 on a day where there was an outage. (*See* Suhr Decl. ¶ 29.) Using the Court's estimated Net Settlement Fund of $1,705,482,[1] the Net Settlement fund represents between 9% and 21% of the potential recovery.

Class Counsel argues that this reduction is reasonable given the risk of continued litigation and the immediacy of recovery. (*See* Mot. at 17.) Specifically, Class Counsel states that there are "several factual and legal issues at the core of this case that could . . . make or break the case." (*Id.* at 12.) As an example, the Parties disagree over "whether one can support a warranty of habitability claim simply by showing the effect that an / / /

---

[1]     The Court's calculation is based on the following estimates: 30% attorney's fees, $11,018 in actual costs, $10,000 as a service award, and $20,000 to the Settlement Administrator.

25-CV-622 TWR (VET)

uninhabitable condition had on the apartment unit, or whether one must also show that the tenant was affected by the condition." (*Id.*)

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir.1982). Further, courts routinely preliminarily and finally approve settlements with reductions of similar amounts. *See, e.g., Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (finding the agreed upon common fund which represented between 11% and 27% of the total potential recovery was fair). Given the risk of continued litigation, the contested legal and factual issues, and Plaintiff's counsel's view that the settlement is fair, the Court finds the Settlement Agreement's terms fall within the range of possible approval.

## C.   No Obvious Deficiencies

Obvious deficiencies in a settlement agreement include "any subtle signs that class counsel have allowed pursuit of their own self-interests to infect the negotiations." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021) (citation omitted). The Ninth Circuit has identified three such subtle signs: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *Id.* at 607–08 (citation omitted). Further, "[i]n the pre-certification context, the district court must do more than acknowledge that warning-sign provisions exist and then conclude that they are not dispositive without further apparent scrutiny." *Id.* at 611.

Two of the three subtle signs are present here: a potentially disproportionate distribution to Class Counsel and a clear-sailing agreement. (*See generally* Settlement Agreement.) Class Counsel has not set the specific percentage of attorney's fees they will request, but "[a]s stipulated in the Settlement Agreement, Class Counsel will not move for anything more than 30% of the Settlement Fund." (Mot. at 14.) Further, the Settlement

Agreement provides that "Defendants will not oppose Class Counsel's motion for fees and costs" made in accordance with the Settlement Agreement. (Settlement Agreement ¶ 8.1.) The presence of a clear-sailing agreement means that the Court must "scrutinize the agreement for signs that the fees requested by counsel are unreasonably high." *McKinney-Drobnis*, 16 F.4th at 610. Further, despite the fact that the Settlement is not contingent on the award of attorney's fees, the Court must consider the implications of the 30% upwards bound. *See In re Bluetooth*, 654 F.3d at 948 ("[A] severable clause simply may not be severed from the court's Rule 23(e) analysis"). The Court will consider the clear-sailing agreement in conjunction with the potentially disproportionate distribution.

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth*, 654 F.3d at 942. "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *Id.* In common fund cases, there is a presumptive 25% benchmark on attorneys' fees. *See id.* at 943. But the "25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Some cases will justify a higher percentage while other cases will justify a lower percentage. *See id.* In determining the proper percentage, courts may consider (1) the extent to which class counsel achieved exceptional results for the class, (2) whether the case was risky for class counsel, (3) whether counsel's performance generated benefits beyond the cash settlement fund, (4) the market rate for the particular field of law (in some circumstances), (4) the burdens class counsel experienced while litigating the case (*e.g.*, cost, duration, foregoing other work), and (5) whether the case was handled on a contingency basis. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954–955.

Assuming Class Counsel requests the upper limit that the Parties have agreed upon, 30% of the Settlement Fund is $748,500. This is 43.89% of the Net Settlement Fund (as

25-CV-622 TWR (VET)

approximated by the Court).[2]  The Court is concerned that this is disproportionate to the amount of work Class Counsel expended in this short-lived litigation.  *See Shannon v. Sherwood Mgmt. Co.*, No. 19-CV-01101-BAS-JLB, 2020 WL 2394932, at *11 (S.D. Cal. May 12, 2020) ("[T]he earlier a case settles, the greater the concern that a percentage award may amount to a windfall for counsel").  This case has been pending for shortly over a year, and Class Counsel's work on this case includes participating in fact discovery, one deposition, and one witness interview.  The Court is skeptical that a lodestar calculation would be close to $748,500.  Additionally, given that the Settlement Fund represents between 13% and 31% of the class members' potential recovery, the Court is concerned that 30% represents overpayment to Class Counsel at the expense of the class members.

Plaintiff's counsel represents that an upward departure from the 25% benchmark may be warranted because this case involved "novel legal issues and a serious risk of nonpayment."  (Mot. at 14.)  These factors could justify an upwards departure from the 25% benchmark.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954–955; *Ontiveros v. Zamora*, 303 F.R.D. 356, 373 (E.D. Cal. 2014) ("The novelty of class counsel's legal arguments may constitute 'special circumstances' justifying a departure from the benchmark.").  But the Court is unconvinced by the present record that the facts of the current case justify an upwards departure.

The Court's concern with the potentially disproportionate distribution in attorney's fees in amplified by the clear-sailing agreement; however, because 30% is not a large departure from the 25% benchmark, the Settlement Agreement is the product of a neutral mediator's proposal, and the Settlement is not contingent on any award of attorney's fees, the Court does not find that the agreement not to oppose the fee request is inherently collusive.  Further, the lack of a reverter clause reduces the inference of collusion drawn

---

[2]  *See supra* n.1.

25-CV-622 TWR (VET)

from the clear sailing provision.  *See In re Toys R Us-Del., Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014).

Overall, despite the Court's concerns, the potential request for 30% of the Settlement Fund in attorney's fees and the clear-sailing agreement do not doom the Settlement at the preliminary approval stage.  Courts routinely grant preliminary approval of similar settlement agreements and require a more fulsome record before the final approval hearing.  *See, e.g., Shannon v. Sherwood Mgmt. Co.*, No. 19-CV-01101-BAS-JLB, 2020 WL 2394932, at *11 (S.D. Cal. May 12, 2020) (granting preliminary approval when the potential fee award was 30% of the settlement fund and the settlement agreement contained a clear sailing provision but requiring detailed billing records before the final approval hearing).  *Accordingly, Class Counsel* **SHALL SUPPORT** *its Motion for Attorney's Fees with detailed billing records so the Court may determine an appropriate lodestar figure and if the request is  over 25%, evidence supporting an upward departure from the 25% benchmark.*  Further, the Court **ADVANCES** the proposed date for filing the motion for attorney's fees and request for Plaintiff's service award to provide additional time for Settlement Class Members to consider the requests.

### D.    *No Preferential Treatment to Class Representatives or Segments of the Class*

District courts must be "particularly vigilant" for signs counsel has allowed the "self-interests" of "certain class members to infect negotiations."  *In re Bluetooth*, 654 F.3d at 947.  For that reason, preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grants preferential treatment to class representatives."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.

#### 1.    *Segments of the Class*

Here, the Winter 24-25 Subclass Members are entitled to additional compensation.  (*See* Mot. at 14.)  Plaintiff contends that the difference in compensation is based on "the strength of the Winter 24-25 Subclass Members' claims and extent of their damages compared to those of the other members of the Settlement Class."  (*Id.* at 15.)  Specifically,

25-CV-622 TWR (VET)

"during the Winter 24-25 Subclass Period, there was a higher volume of hot water interruptions of long duration, broad scope, and uniform effect, and the evidence of those interruptions was comparatively stronger than the evidence of interruptions outside of the Winter 24-25 Subclass Period." (*Id.*) Given the higher volume and duration of interruptions in the Winter 24-25 period, the Court does not find the additional compensation for the Winter 24-25 Subclass is preferential treatment. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits.") (citation omitted).

### 2. Class Representative

"A disproportionate service award can indicate preferential treatment that undermines both the reasonableness of a settlement for absent class members and the adequacy of representation by the class representative." *Wilson v. J.B. Hunt Logistics, Inc.*, No. 218CV03487SVWAFMX, 2020 WL 11626082, at *4 (C.D. Cal. Nov. 13, 2020) (citing *Staton*, 327 F.3d at 975–78). The Settlement Agreement provides that "Class Counsel shall apply to the Court to approve a Service Award for Plaintiff Giorgio Fogy in an amount not to exceed $10,000.00, subject to approval by the Court." (Settlement Agreement ¶ 8.2.) Even though the Settlement is not contingent on the award of a service fee, the Court must consider the implications of the $10,000 upwards bound. *See In re Bluetooth*, 654 F.3d at 948 ("[A] severable clause simply may not be severed from the court's Rule 23(e) analysis").

The relevant factors in determining an appropriate service award include (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefitted from those actions, (3) the amount of time and effort the plaintiff expended in pursuing the litigation, and (4) fears of reputational risk. *See Staton*, 327 F.3d at 977; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiff's counsel represents that they will seek $10,000 to compensate Plaintiff for "(1) his

25-CV-622 TWR (VET)

willingness to serve, without which there would be no case, and (2) the time and effort he invested in this litigation." (ECF No. 20-3 ("Treglio Decl.") ¶ 4.)

While it appears that Plaintiff has actively participated in this litigation, (*see* Suhr Decl. ¶ 6), the Court is concerned that the contemplated $10,000 service award is not reasonable compensation for protecting the interests of the class and helping with the litigation. Comparing $10,000 to the estimated payout for class members, the upper limit of the suggested service award appears disproportionately high. The Court's preliminary calculation of the Net Settlement Fund is $1,705,482.[3] Applying the calculations provided by Plaintiff, this would result in a class member who is part of both the Settlement Class and the Winter 24-25 Subclass receiving $786.69 and a Settlement Class member who is not also a Winter 24-25 Subclass member receiving $261.38. A $10,000 service award represents 1,271% of $786.69 and 3,826% of $261.38. While the Court recognizes that Plaintiff has participated meaningfully in the litigation process, this level of discrepancy in award level is concerning.

The fact that the service award is a small percentage of the overall Settlement Fund, however, weighs in favor of reasonableness. *See Katz-Lacabe v. Oracle Am., Inc.*, No. 3:22-CV-04792-RS, 2024 WL 4804974, at *6 (N.D. Cal. Nov. 15, 2024) (approving $10,000 service awards when they represented a small portion of the settlement fund and the amount they recovered for the class was less than 50 cents per class member). A service award of $10,000 represents 0.4% of the Settlement Fund and 0.6% of the estimated Net Settlement Fund. Therefore, at the preliminary approval stage, notwithstanding the Court's concerns, the Court does not find that the upper limit on Plaintiff's service award request constitutes "preferential treatment" such that it should defeat preliminary approval. *See In re ImmunityBio, Inc. Sec. Litig.*, No. 3:23-CV-01216-GPC-VET, 2025 WL 834767, at *13 (S.D. Cal. Mar. 17, 2025) (finding that "because incentive awards are not per se unreasonable," the service award provision setting an upper

---

[3] *See supra* n.1.

limit of $15,000 on the lead plaintiff's service award request did not bar preliminary approval of the settlement agreement). *Plaintiff* **SHALL SUPPORT** *his request for a service award with how many hours Plaintiff spent working on this case. See, e.g., Ontiveros v. Zamora*, 303 F.R.D. 356, 366 (E.D. Cal. 2014) (using the hours the plaintiff estimated he worked on the case and a reasonable hourly rate to calculate the appropriate service award); *Griffin v. Consol. Commc'ns*, No. 2:21-CV-0885 WBS KJN, 2022 WL 16836711, at *4 (E.D. Cal. Nov. 9, 2022) (granting preliminary approval but stating that if the plaintiff did not reduce the amount of her requested reward "she should be prepared to present further evidence of her substantial efforts taken as class representative or other relevant personal sacrifices to better justify the high incentive award requested" of $7,500).

### E.    Conclusion

In light of the foregoing, the Court **GRANTS** the Parties' Motion for Preliminary Approval of the Class Settlement.

**CLASS NOTICE**

## I.    Legal Standard

For any class certified under Rule 23(b)(3), "class members must be afforded the best notice practicable under the circumstances, which includes individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state in plain, easily understood language:

(i)     the nature of the action;

(ii)    the definition of the class certified;

(iii)   the class claims, issues, or defenses;

(iv)    that a class member may enter an appearance through an attorney if the member so desires;

(v)     that the court will exclude from the class any member who requests exclusion;

13

(vi)    the time and manner for requesting exclusion; and

(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

## II.    Analysis

To effectuate notice, Defendants will supply the Settlement Administrator with the names, email addresses, and mail addresses of the Settlement Class Members.  (*See* Mot. at 5.)  Then, within fourteen days, the Settlement Administrator will email the Short-Form Notice to the Settlement Class Members.  (*See id.*)  The Short-Form Notice will contain links to the Settlement Website, the Long-Form Notice, and the Opt-Out Form.  (*See id.*)  If any e-mails bounce back as undeliverable, the Settlement Administrator will send the Short-Form Notice via First-Class U.S. Mail.  (*See id.*)  Settlement Class Members will have seventy days from the date the Court grants preliminary approval of the Settlement either to postmark or email the Opt-Out Form.

After a review of the proposed Long-Form and Short-Form Notices (the "Proposed Notices"), the Court finds that they generally adequately explain the information required by Rule 23(c)(2)(B) using a question-and-answer format.  (*See generally* ECF No. 20-2 Exs. 1 ("Long-Form Notice"), 2 ("Short-Form Notice").)   The Long-Form Notice adequately informs Class Members of the nature of the litigation, (*see id.* at 3); the essential terms of the Settlement, (*see id.* at 4–5); the two classes being certified, (*see id.* at 4); that Defendant denies liability, (*see id.* at 3); how the Settlement fund will be apportioned, (*see id.* at 3); that a Class Member can appear through their own attorney, (*see id.* at 8); and that a class judgment will be binding if the Class Member does not opt-out, (*see id.* at 7).  The Long-Form Notice also adequately provides procedural information on how to object to or comment on the Settlement, (*see id.* at 8–9); how to opt-out of the Settlement, (*see id.* at 6–7); the time and manner for opting out of the Settlement, (*see id.*); and where to get more information, (*see id.* at 10).  Further, the Short-Form Notice, which

is to be sent via email, also provides information on 1) the nature of the action, (*See id.* at 1); 2) the definition of the class certified, (*see id.* at 2); 3) the class claims, (*see id.* at 1); 4) that a Class Member may enter an appearance through an attorney, (*see id.* at 3); 5) that the Court will exclude from the class any member who requests exclusion, (*see id.*), 6) the time and manner for requesting exclusion, (*see id.*); and 7) the binding effect of a class judgment on member, (*see id.* at 2).

For the Proposed Notices to be the best practicable under the circumstances, however, the following changes should be made:

1.  To paragraph 2 on page 5 of the Long-Form Notice, the Parties **SHALL ADD** the current estimate of actual costs: "Prior to disbursement of the Settlement Fund to the Settlement Class, Plaintiff will apply to the Court for a service award up to $10,000.00 and Plaintiff's attorneys will apply to the Court for attorney's fees of up to 30% of the Settlement Fund and for recovery of the costs that they expended to litigate this Lawsuit, currently estimated at $11,018.36."

2.  To paragraph 8 on page 2 of the Short-Form Notice, the Parties **SHALL REPLACE** the statement, "Prior to disbursement of settlement payments, the Settlement Fund may be reduced by attorney's fees and costs, a service award to Plaintiff Giorgio Fogy, and payment to the Settlement Administrator, Phoenix Settlement Administration, for its services in administering this Settlement," with the following: "Prior to disbursement of the Settlement Fund to the Settlement Class, Plaintiff will apply to the Court for a service award up to $10,000.00 and Plaintiff's attorneys will apply to the Court for attorney's fees of up to 30% of the Settlement Fund and for recovery of the costs that they expended to litigate this Lawsuit. Such amounts, if awarded, will be deducted from the Settlement Fund."

Subject to the above changes, the Court concludes that this is the best notice practicable under the circumstances. *See* Fed. Rule Civ. Proc. 23(c). Accordingly, the Court

25-CV-622 TWR (VET)

**APPROVES** the proposed Long-Form Notice, Short-Form Notice, and Notice Plan, subject to the above changes.

## CONDITIONAL CLASS CERTIFICATION

### I.    Legal Standard

Confronted with a request for settlement-only class certification, the district court must pay "undiluted, even heightened, attention" to class certification requirements "designed to protect absentees by blocking unwarranted or overbroad class definitions." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To obtain class certification, Plaintiffs must satisfy the four prerequisites identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b). *See id.* at 614. "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co*., 593 F.3d 802, 806 (9th Cir. 2010). Rule 23(b) requires a plaintiff to establish one of the following: (1) that there is a risk of substantial prejudice from separate actions, (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate, or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(1)–(3).

### II.    Analysis

For the reasons explained below, the Court finds the proposed Settlement Classes satisfy the requirements of Federal Rule of Civil Procedure 23. Pursuant to Rule 23(b)(3), the Court **CONDITIONALLY CERTIFIES** the "Settlement Class" consisting of all Tenants who resided at Vantage Pointe at any time between February 10, 2021, and the date of Preliminary Approval and **CONDITIONALLY CERTIFIES** the "Winter 24-25 Subclass" consisting of all Tenants who resided at Vantage Pointe at any time between November 1, 2024, to February 28, 2025.

/ / /

/ / /

16

25-CV-622 TWR (VET)

### A.    Rule 23(a) Requirements

#### 1.    Numerosity

The numerosity requirement under Rule 23(a) requires parties seeking class certification to establish that the class is so large that joinder of all members is impracticable. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). "Impracticable" does not mean that joinder is a "literal impossibility," but instead asks whether joinder of all class members is "'practicable'—*i.e.*, 'reasonably capable of being accomplished.'" *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 837 (9th Cir. 2022). The Ninth Circuit has instructed that "where a class is large in numbers, joinder will usually be impracticable." *Id.* at 835; *see also Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (explaining that numerosity is typically satisfied "when a class includes at least 40 members"). Here, the "Settlement Class is composed of 4,065 members, and the Winter 24-25 Subclass is composed of 1,224 members." (Mot. at 18.) Accordingly, the Court finds that numerosity is satisfied.

#### 2.    Commonality

Rule 23(a)(2)'s commonality requirement is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Common questions need not address every aspect of the claims, but they must "generate common *answers* apt to drive the resolution of the litigation." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015) (emphasis in original) (citation omitted). A single common question is sufficient. *See id.* Here, Plaintiff states there are the following common questions:

> [T]he existence of water, hot water, and elevator interruptions, the duration of those interruptions, the scope and severity of those interruptions, the causes of those interruptions and whether those causes were reasonably avoidable by Defendants, whether Defendants' negligently managed their plumbing and elevator systems and equipment thereby leading to the interruptions, whether Defendants' responses to the interruptions were timely and reasonable, the frequency, duration, or severity of interruption sufficient to serve as the basis for the causes of action alleged in the Action, [and] whether a warranty of habitability claim depends on the effect of the uninhabitable condition on the

unit alone or the effect on the tenant, and the proper measure of damages for an interruption.

(Mot at 19.)  Because common answers to these questions would apply to all class members, commonality is satisfied.

### 3.    Typicality

The typicality requirement considers whether, in comparison to the representative parties, "other members have the same or similar injury, whether the action is based on conduct [that] is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).  Commonality and typicality "'tend to merge' in practice because both of them 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) (quoting *Wal-Mart*, 564 U.S. at 349).

The Ninth Circuit's test for typicality is (1) "whether other members have the same or similar injury"; (2) "whether the action is based on conduct [that] is not unique to the named plaintiffs"; and (3) "whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation and internal quotation marks omitted).  Here, Plaintiff alleges that members of the Settlement Class and Winter 24-25 Subclass suffered the same alleged injury as him—overpayment of rent—based on the same lack of reliable access to water, hot water, and elevators. (*See* Mot. at 20.)  Because the Court finds that the Class Members suffered similar injuries to Plaintiff, the action is based on common questions, and Class Members have been injured by the same course of conduct that injured Plaintiff, typicality is satisfied.

/ / /

/ / /

25-CV-622 TWR (VET)

4.    *Adequacy*

Rule 23(a)(4) requires the representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

a.    Named Plaintiff/Class Representative

The Court is assured that Plaintiff participated vigorously in this litigation. (*See* Suhr Decl. ¶ 6.) Further, while the Court has some qualms about the potential $10,000 service award request, *see supra* Section II.D.2, because the Settlement is not conditioned on any service award, (*see* Settlement Agreement ¶ 8.2), the Court finds no conflict of interest between Plaintiff and the absent Class Members.

b.    Class Counsel

Class Counsel alleges they have adequately represented the Settlement Class Members. (*See* Mot. at 8–9.) Specifically, Gregory Suhr of Weeks Nelson "led the charge in the pre- and post-filing legal research, pre- and post-filing fact investigation, discovery review, witness identification and interviewing, and deposition in the Action." (*Id.* at 8.) And Jim Treglio of Potter Handy LLP "helped Mr. Suhr craft Plaintiff's damages theories and mediation strategy[;] attended the mediation to advise on viable, fair, and adequate class settlement figures and structures[;] and reviewed and helped draft the Settlement Agreement and its exhibits." (*Id.* at 9.) The Court is assured Class Counsel participated vigorously in this litigation. Further, as with Plaintiff, the Court has some concerns over the potential attorney's fees motion, *see supra* Section II.C, but because the Settlement is not conditioned on any attorney's fee award, (*see* Settlement Agreement ¶ 8.1), the Court finds no conflict of interest between Class Counsel and the absent Class Members.

**B.    *Rule 23(b)(3) Requirements***

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action

is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1. Predominance

First, certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The Ninth Circuit has held that "there is clear justification for handling the dispute on a representative rather than individual basis" if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. A question is common where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (alteration in original). The proper question is thus "whether the method of proof would apply in common to all class members . . . not whether the method of proof would or could prevail." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1026 (9th Cir. 2024) (citing *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 915 F.3d 1, 12 (1st Cir. 2019)).

Here, Plaintiff asserts that the main issues in this case are common. (*See* Mot. at 21.) For example, common questions include whether the alleged water, hot water, or elevator outages or shutoffs occurred; the scope and severity of those outages or shutoffs; the duration of those outages and shutoffs; and whether these outages and shutoffs were reasonably avoidable by Defendants. (*See id.*) In contrast, the individual issues would relate to the term of a Class Member's lease and whether their unit was within the affected portion of the building for a particular outage or shutoff. (*See id.* at 22.) The Court finds that common questions of law and fact predominate over individual questions.

### 2. Superiority

Second, Rule 23(b)(3) requires Plaintiffs to demonstrate that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) enumerates a list of non-exhaustive factors

25-CV-622 TWR (VET)

pertinent to class certification, including: the class members' interests in individually controlling the prosecution or defense of separate actions, the extent and nature of any litigation concerning the controversy already begun by or against class members, the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and the likely difficulties in managing a class action. *Id.* The superiority requirement "tests whether class litigation of common issues will reduce litigation costs and promote greater efficiency." *In re Ferrero Litig.*, 278 F.R.D. 552, 561 (S.D. Cal. 2011) (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). Further, for a "request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Here, Plaintiff represents that individual damages "would not be so high as to properly incentivize individual litigation, especially in light of the potential retaliatory ramifications." (Mot. at 23.) The Court finds that classwide resolution is superior to other methods of adjudicating this controversy given the unlikelihood that individual Class Members would pursue individual lawsuits.

<strong>CONCLUSION</strong>

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Court **PRELIMINARILY AND CONDITIONALLY CERTIFIES**, for settlement purposes only, the following Settlement Class and Winter 24-25 Subclass:

 (a) A "Settlement Class" consisting of all Tenants who resided at Vantage Pointe at any time between February 10, 2021, and the date of Preliminary Approval (the "Class Period").

 (b) A "Winter 24-25 Subclass" consisting of all Tenants who resided at Vantage Pointe at any time between November 1, 2024, to February 28, 2025 (the "Winter 24-25 Subclass Period").

For both the Settlement Class and the Winter 24-25 Subclass, the term "Tenant" is defined as "any person who 1) signed a lease for an apartment at Vantage Pointe, and 2) resided

in an apartment at Vantage Pointe for which they signed a lease." The Settlement Class includes the Winter 24-25 Subclass. Both the Settlement Class and the Winter 24-25 Subclass exclude the Released Parties and all persons who file a timely and valid Opt-Out Form.

2.     Solely for purposes of the Settlement of this Class Action, the Court **FINDS** that each element required for certification of the Settlement Class and Winter 24-25 Subclass pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met.

3.     The Court finds that, pursuant to Rule 23 of the Federal Rules of Civil Procedure and for the purposes of the Settlement only, Plaintiff Giorgio Fogy is an adequate class representative and **CERTIFIES** him as Class Representative for the Settlement Class and Winter 24-25 Subclass.

4.     The Court **APPOINTS** Gregory Suhr of Weeks Nelson and Jim Treglio of Potter Handy LLP as Class Counsel for the Settlement Class and Winter 24-25 Subclass pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

5.     The Court **AUTHORIZES** Class Counsel to retain Phoenix Settlement Administration (the "Settlement Administrator") to supervise and administer the notice procedure in connection with the proposed Settlement as well as to process any exclusion requests.

6.     The Court **PRELIMINARILY APPROVES** the Settlement, as embodied in the Settlement Agreement, as being fair, reasonable and adequate to the Settlement Class, subject to further consideration at the Final Approval Hearing.

7.     The Court **SETS** a Final Approval Hearing on <u>July 2, 2026, 2026, at 1:30 p.m.</u>, in Courtroom 14A of the James M. Carter and Judith N. Keep United States Courthouse, 333 West Broadway, San Diego, California  92101, for the following purposes:

(a)     to determine whether the proposed Settlement is fair, reasonable, and adequate to the Settling Classes, and should be approved;

25-CV-622 TWR (VET)

(b)  to determine whether a judgment should be entered to dismiss the Class Action with prejudice;

(c)  to determine whether the proposed plan for allocation and distribution of the proceeds of the Settlement is fair and reasonable, and should be approved;

(d)  to determine whether the motion by Class Counsel for an award of attorneys' fees and reimbursement of costs should be approved;

(e)  to determine whether Plaintiff's request for a service award should be approved; and

(f)  to consider any other matters that may properly be brought before the Court in connection with the Settlement.

8.  Subject to the changes stated in this Order, *see supra* page 15, the Court **APPROVES**, as to form and content, the proposed Long-Form Notice, the Short-Form Notice, and the Opt-Out Form.  The date and time of the Final Approval Hearing **SHALL BE INCLUDED** in the Proposed Notices before dissemination.

9.  Any member of the Settlement Class who wishes to exclude themself from the Settlement Class **MUST REQUEST** exclusion in writing within the time and in the manner set forth in the Proposed Notices.  The Court **APPROVES** as to form and content the Opt-Out Form affixed to the Settlement Agreement.  If fully and correctly filled out and timely and properly returned, the Opt-Out Form will be considered a valid request for exclusion.  Members of the Settlement Class can request exclusion through the Opt-Out Form or by providing some other written request for exclusion, so long as the exclusion request:

(a)  is personally signed by the member requesting exclusion (the "Requesting Person");

(b)  states the Requesting Person's full name, mailing address, telephone number, and email address, if any;

(c)   contains an unequivocal statement that Requesting Person wishes to be excluded from this Settlement and from the Settlement Class;

(d)   states the case name and case number for this Class Action; and

(e)   states the member identification number assigned to the Requesting Person by the Settlement Administrator in the Notice.

The exclusion requests must be emailed or mailed to the Settlement Administrator at the mailing or email address provided in the Notice. The exclusion requests must be emailed or postmarked by no later than seventy (70) days after the date of this Order. *A request for exclusion shall not be effective unless it provides all the required information and is received by the Settlement Administrator within the time stated above or is otherwise accepted by the Court for good cause.* A Winter 24-25 Subclass Member cannot exclude themselves from the Settlement Class while declining to exclude themselves from the Winter 24-25 Subclass or exclude themselves from the Winter 24-25 Subclass while declining to exclude themselves from the Settlement Class. Further, the right to opt-out **MUST BE EXERCISED INDIVIDUALLY**, not as a member of a group.

10.   Any person who timely and validly requests exclusion in compliance with the terms stated in this Order and is excluded from the Settlement Class shall not be a Member of the Settlement Class, shall not be bound by the terms of the Settlement or any orders or judgments in this Class Action, and shall not receive any Settlement Payment.

11.   Any Member of the Settlement Class who does not timely and validly request exclusion from the Settlement Class in the manner stated in this Order shall be deemed to have waived their right to be excluded from the Settlement Class and shall be bound by the provisions of the Settlement Agreement; Settlement; and all proceedings, determinations, Orders, and Judgments in the Class Action, including, but not limited to, the Judgment and the Releases provided for therein.

12.   Any Member of the Settlement Class who does not request exclusion from the Settlement Class may enter an appearance in the Class Action, at his or her own expense, individually or through counsel of his or her own choice, by filing with the Clerk

24

25-CV-622 TWR (VET)

of Court and delivering a notice of appearance to Class Counsel, Defendants' Counsel, and the Settlement Administrator, such that it is received <u>no later than seventy (70) days after the date of this Order</u>, or as this Court may otherwise direct.  Any Member of the Settlement Class who does not enter an appearance will be represented by Class Counsel.

| COURT | CLASS COUNSEL | DEFENDANTS' COUNSEL | SETTLEMENT ADMINISTRATOR |
|---|---|---|---|
| United States District Court, Carter-Keep Courthouse c/o Clerk of Court 333 W. Broadway Suite 420 San Diego, CA 92101 | Weeks Nelson c/o Gregory N. Suhr c/o Gregory K. Nelson 16236 San Dieguito Rd. Ste. 5-23 Rancho Santa Fe, CA 92067 | Duane Morris c/o Deanna Lucci c/o Courtney Baird 750 B St. Ste. 2900 San Diego, CA 92101 | Phoenix Settlement Administration P.O. Box 7208 Orange, CA 92863 |

13. Any Settlement Class Member who does not request exclusion from the Class may file a written objection to the proposed Settlement, the proposed plan of allocation and distribution, Class Counsel's motion for an award of attorneys' fees and reimbursement of costs, and/or Plaintiff's request for Service Award and appear and show cause, if that person has any cause, why

> (a)   the proposed Settlement should not be approved as fair, reasonable, and adequate;
>
> (b)   a Final Judgment should not be entered;
>
> (c)   the proposed plan of allocation and distribution should not be approved;
>
> (d)   Class Counsel's motion for attorneys' fees and reimbursement of costs should not be approved; and/or
>
> (e)   a Service Fee Award should not be made to Plaintiff.

25-CV-622 TWR (VET)

14.    Any objections, filings, and other submissions by the objecting Member of the Settlement Class (the "Objecting Person") must:

(a)    state the Objecting Person's full name, address, telephone number, and email address, if any, and that of the Objecting Person's counsel, if any;

(b)    the grounds for all objections, stated with specificity, and any evidence the Objecting Person wishes to introduce in support of the objections;

(c)    whether the objection applies only to the Objecting Person, to a specific subset of the Settlement Class, or to the entire Settlement Class;

(d)    proof of membership in the Settlement Class and—if the objection is specific to the Winter 24-25 Subclass—proof of membership in the Winter 24-25 Subclass;

(e)    a statement as to whether the Objecting Person intends to appear at the final fairness hearing, either individually or through counsel;

(f)    if appearing at the final fairness hearing, the identity of any witnesses the Objecting Person intends to have testify and copies of any exhibits the Objecting Person intends to introduce into evidence;

(g)    the Objecting Person's signature;

(h)    the case name and case number for the Action; and

(i)    the Objecting Person's claim identification number provided by the Settlement Administrator in the Notice.

15.    Any Member of the Settlement Class who does not make an objection in the manner provided herein shall be deemed to have waived their right to object to any aspect of the proposed Settlement, the proposed plan of allocation and distribution, Class Counsel's motion for an award of attorneys' fees and reimbursement of costs, and Plaintiff's request for a Service Award.

25-CV-622 TWR (VET)

16. Until otherwise ordered by the Court, the Court **STAYS** all proceedings in the Class Action other than proceedings necessary to carry out or enforce the terms and conditions of the Settlement Agreement.

17. Class Counsel **SHALL FILE AND SERVE** its motion for attorney's fees and reimbursement of costs and Plaintiff's request for a service award no later than twenty-five (25) days after the date of this Order.  Class Counsel **SHALL FILE AND SERVE** the opening papers in support of the proposed Settlement no later than thirty-five (35) days before the Final Approval Hearing; and responsive papers, if any, shall be filed and served no later than seven (7) days before the Final Approval Hearing.

18. The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.[4]

19. The Court reserves the right to continue the date of the Final Approval Hearing without further notice to the Class Members.

20. The Court **SETS** the following schedule:

| EVENT | DEADLINE | DATE |
|---|---|---|
| Defendants to provide name and contact information to Settlement Administrator | 5 business days from the date of this Order | **March 23, 2026** |
| Settlement Administrator to give notice in accordance with this Order | 14 days from the date Defendant provides information to the Settlement Administrator | **April 6, 2026** |
| Class Counsel to file motion for attorney's | 25 days from the date of this Order | **April 10, 2026** |

---

[4] To the extent the Parties intend for the Court to retain jurisdiction after final approval of the Settlement Agreement, in accordance with Section V of the undersigned's Standing Order for Civil Cases, the Parties **SHALL EMAIL** a completed Consent to Jurisdiction by a United States Magistrate Judge form to efile_robinson@casd.uscourts.gov.

25-CV-622 TWR (VET)

| fees and Plaintiff's service award | | |
| --- | --- | --- |
| Deadline for Settlement Class Members to request exclusion or object to the Settlement | 70 days from the date of this Order | **May 25, 2026** |
| Deadline for Class Counsel to file papers in support of final approval of the Settlement | 35 days prior to the Final Approval Hearing | **May 28, 2026** |
| Deadline for reply papers in response to Class Counsel's opening papers in support of final approval of the Settlement | 7 days prior to the Final Approval Hearing | **June 25, 2026** |
| Final Approval Hearing | N/A | **July 2, 2026, at 1:30 p.m.** |

**IT IS SO ORDERED.**

Dated:  March 16, 2026

_____

Honorable Todd W. Robinson
United States District Judge

25-CV-622 TWR (VET)