UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIORGIO FOGY on behalf of himself and all others similarly situated,<br><br>                           Plaintiff,<br><br>v.<br><br>BPREP VANTAGE POINTE LLC, a Delaware Limited Liability Company, BROOKFIELD PROPERTIES MULTIFAMILY LLC, a Delaware Limited Liability Company, and DOES 1-100,<br><br>                         Defendants. | Case No.:  25-CV-622 TWR (VET)<br><br>**ORDER (1) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, (2) PARTIALLY GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS AND PLAINTIFF'S SERVICE AWARD, AND (3) ENTERING FINAL JUDGMENT**<br><br>(ECF Nos. 25, 26) |

Presently before the Court are Plaintiff Giorgio Fogy's Unopposed Motion for Final Approval of Class Action Settlement ("Fin. App. Mot.," ECF No. 26) and Class Counsel's Motion for Attorneys' Fees and Costs and Plaintiff's Motion for Service Award ("Fee Mot.," ECF No. 25).  The Court held a Final Approval hearing on July 2, 2026.  (ECF No. 30.)  After carefully considering the Parties' arguments, the facts, and the relevant law, the Court **GRANTS** the Unopposed Final Approval Motion and **PARTIALLY GRANTS** Class Counsel's Motion for Attorneys' Fees and Costs and Plaintiff's Motion for Service Award.

1

**FACTUAL BACKGROUND**

**I.     Plaintiff's Claims**

This action arises from Plaintiff Giorgio Fogy's tenancy at Vantage Pointe, a 679-unit apartment building located at 1281 Ninth Ave, San Diego, CA 92101.  (*See* Fin. App. Mot. at 2.)  Plaintiff alleges he and members of the Settlement Class "experienced multiple and frequent water and hot water outages and shutoffs and elevator outages and shutoffs."  (*Id*.)  Plaintiff alleges the hot water outages "were particularly frequent and persistent in the months of November 2024 to February 2025." (ECF No. 20 at 2.)   Plaintiff sued "for breach of contract, breach of the implied warranty of habitability, breach of the implied covenant of quiet enjoyment, private nuisance, negligence, and violation of California's Business & Professions Code sections 17200, et seq." (Fin. App. Mot. at 2.)

**II.    Litigation and Settlement**

Plaintiff filed this action on February 10, 2025, and Defendants removed this action to this Court on March 14, 2025. (*See* Fin. App. Mot. at 2.)  On April 30, 2025, the Parties participated in an early neutral evaluation conference that did not result in settlement, so the Parties proceeded with discovery. (*See* ECF No. 8; ECF No. 26-1 ("Suhr Decl.") ¶¶ 6–7.)  Defendants produced over "14,000 pages of documents" in response to Plaintiff's discovery requests. (*See* Fin. App. Mot. at 2.)  Plaintiff's counsel also "took the deposition of Jose Macias, Brookfield's Regional Engineer, and conducted a witness interview of the former Maintenance Manager at Vantage Pointe (the highest-ranking on-site maintenance employee), Antonio Herrera." (*Id*.)  On December 11, 2025, the Parties participated in a 12-hour mediation, before Scott Markus of Signature Resolutions. (*See id*. at 3.)  The mediation "ended in a mediator's proposal—rendered by Mr. Markus after hearing detailed analysis of the case from the parties—that both parties accepted." (*Id*.)  This mediator's proposal resulted in the Settlement Agreement. (*See id.*)

/ / /

/ / /

/ / /

**III.    The Classes**

The Settlement Agreement provides the following two classes:

1.    The Settlement Class: All Tenants who resided at Vantage Pointe at any time between February 10, 2021, and the date of Preliminary Approval.

2.    The Winter 24-25 Subclass: All Tenants who resided at Vantage Pointe at any time between November 1, 2024, to February 28, 2025.

(*See* ECF No. 26-2 ("Settlement Agreement") ¶¶ 2.3, 2.4.)  The Settlement Class includes the Winter 24-25 Subclass.  (*Id.* ¶ 2.4.)  Both the Settlement Class and the Winter 24-25 Subclass exclude the following released parties: "Defendants, together with each of their respective affiliates, agents, employees, officers, directors, parents, subsidiaries, attorneys, representatives, advisors, administrators, predecessors, successors, insurers, accountants, advisors, or anyone acting on their behalf."  (*Id.* ¶ 2.31.)

**IV.    The Settlement Agreement**

The Settlement Agreement provides that Defendants will pay $2,495,000 to the Settlement Class, with no reversion to Defendants.  (*See* Fin. App. Mot. at 3.)  "Of that amount, $1,555,000 (or 62.3%) is apportioned to the Settlement Class, and $940,000 (or 37.7%) is apportioned to the Winter 24-25 Subclass." (*Id*.)  Prior to disbursement to the Settlement Class, the Settlement Fund will be used to pay (1) any service award to Plaintiff, (2) Class Counsel's attorneys' fees, (3) Class Counsel's costs, and (4) the Settlement Administrator's fees.  (*See id*. at 4).

**CLASS CERTIFICATION FOR THE PURPOSES OF SETTLEMENT**

In its Preliminary Approval Order, the Court conditionally certified the Settlement Class and Winter 24–25 Subclass for the purposes of settlement.  (*See* ECF No. 22 ("Prelim. App. Order") at 16–21.)  No new facts have been introduced that would change this analysis.  Accordingly, for the reasons previously explained, (*see id*.), the Court finds the requirements of Federal Rules of Civil Procedure 23(a) are satisfied and **CERTIFIES**, for the purposes of settlement only, the following classes:

/ / /

25-CV-622 TWR (VET)

1. A "Settlement Class" consisting of all Tenants who resided at Vantage Pointe at any time between February 10, 2021, and the date of Preliminary Approval (the "Class Period").

2. A "Winter 24-25 Subclass" consisting of all Tenants who resided at Vantage Pointe at any time between November 1, 2024, to February 28, 2025 (the "Winter 24-25 Subclass Period").

## FINAL APPROVAL OF SETTLEMENT

### I.     Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). The Court's review of the settlement is meant to be "extremely limited," and the Court should consider the settlement as a whole. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

For approval of a class settlement, the Court determines whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement is "fair, reasonable, and adequate," district courts should consider whether:

A.     the class representatives and class counsel have adequately represented the class;

B.     the proposal was negotiated at arm's length;

C.     the relief provided for the class is adequate, taking into account:

a.     the costs, risks, and delay of trial and appeal;

/ / /

25-CV-622 TWR (VET)

b. the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

c. the terms of any proposed award of attorney's fees, including timing of payment; and

d. any agreement required to be identified under Rule 23(e)(3); and

D. the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D). Courts may also refer to the following factors, often referred to as the "*Hanlon* factors," which are commonly used in the Ninth Circuit: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *See In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025).

Further, if there are "indicia of implicit collusion, " then a proposed settlement must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e). *In re Cal. Pizza Kitchen*, 129 F.4th at 675 *(citing In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). Indicia of collusion include: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Id.* (*citation omitted*). Moreover, for pre-class certification settlements, the Court must subject the settlement to "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.* (*citing Hanlon*, 150 F.3d at 1026).

///

25-CV-622 TWR (VET)

## II.     Analysis

### A.     *Adequate Notice*

For the Court to approve a settlement, "[t]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).  Here, the Settlement Administrator first attempted to provide Class Members notice via email.  (*See* Fin. App. Mot. at 6.)  For Class Members whose emails were unavailable, the Settlement Administrator sent notice by mail.  (*See id.*)  "For Class Members for whom Defendants had neither an email address nor mailing address, prior to distributing notice, the Settlement Administrator performed a skip trace using the Class Members' name and Defendant-provided phone number to find the Class Members' email address." (*Id.*)  The Settlement Administrator also provided notice pursuant to 28 U.S.C. § 1715 ("CAFA Notice") on March 9, 2026.  (*See id.* at 25; ECF No. 26-3 ¶ 4.)

Despite the Settlement Administrator's efforts, notice was not provided to eight class members.  (*See id.* at 24.)  But because the Court finds Class Counsel took reasonable measures to provide notice, the Court finds that notice was provided in an adequate manner.  *See Santillan v. Verizon Connect, Inc.*, No. 3:21-CV-1257-H-KSC, 2024 WL 627998, at *5 (S.D. Cal. Feb. 13, 2024) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice.") (quoting *Winans v. Emeritus Corp.*, No. 13-CV-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016)).

### B.     *Collusion Factors*

At the preliminary approval stage, the Court was concerned with the potentially disproportionate distribution to Class Counsel and the clear sailing agreement.  (*See* Prelim. App. Order at 7–10.)  In response, Class Counsel requested 25% in attorneys' fees.  (*See* Fee Mot. at 1.)  This request is not disproportionate.  *See infra* pages 11–12.  Thus, the Court only considers the existence of a clear sailing agreement.  In doing so the Court finds that because any difference between the requested attorneys' fees and service award

and amounts awarded will go to the Class Members, there is no risk of collusion.  *See Blount v. Host Healthcare, Inc.*, No. 21-CV-310-MMA (WVG), 2022 WL 1094616, at *6 (S.D. Cal. Apr. 12, 2022) (concluding that the "clear sailing" provision did not show signs of collusion where settlement agreement provided that any difference between fees sought and fees awarded would revert to net settlement amount, and thus, to the class).

**C.    Rule 23 Factors**

*1.    Adequate Representation*

Adequacy involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

a.    Named Plaintiff

Service awards to class representatives do not automatically create a prohibited conflict of interest between class members and class representatives.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).  But "[a] disproportionate service award can indicate preferential treatment that undermines both the reasonableness of a settlement for absent class members and the adequacy of representation by the class representative."  *Wilson v. J.B. Hunt Logistics, Inc.*, No. 218CV03487SVWAFMX, 2020 WL 11626082, at *4 (C.D. Cal. Nov. 13, 2020) (citing *Staton*, 327 F.3d at 975–78). Following the reduction in Plaintiff's proposed service award discussed below, *see infra* pages 14–16, Plaintiff does not have any conflict of interest with his fellow Class Members.  Accordingly, there is no barrier to final approval.

b.    Class Counsel

The Court finds that Class Counsel does not have any conflicts of interest and that they prosecuted this action vigorously on behalf of the class.  This finding is bolstered by Class Counsel's voluntary reduction of their fee request.  (*See generally* Fee Mot.) Accordingly, this weighs in favor of final approval.

/ / /

25-CV-622 TWR (VET)

### 2. *Arm's Length Negotiation*

This settlement is the product of a 12-hour mediation and the resulting mediator's proposal. (*See* Fin. App. Mot. at 12.) Class Counsel states that substantial discovery and fact investigation occurred prior to the mediation and that the mediation was a detailed discussion of the "facts of the Action, issues of certifiability, merits issues, and damages issues." (*Id*.) Given the extent of pre-settlement discovery and the fact that the Settlement Agreement was negotiated by a neutral mediator, the Court finds the settlement was negotiated at arm's length.

### 3. *Adequate Relief*

#### a. Costs, Risks, and Delay of Further Litigation

Class Counsel asserts that "the risk of non-recovery or reduced recovery" was substantial and thus supports final approval. (Fin. App. Mot. at 13.) Specifically, Class Counsel identifies a "novel legal question" that the Court would have to determine— whether a warranty of habitability claim arises even if the tenant was not around to experience a lack of hot water.[1] (*Id.*) Further, Class Counsel states there would be difficulties marshaling proof of the hot water interruptions at trial and trial would be risky because a jury would have to decide whether interruptions were material. (*See id.* at 14– 15.) The Court finds that there are multiple risks to continued litigation for Class Members; therefore, the Court finds that the costs, risks, and delay of trial and appeal weigh in favor of final approval.

---

[1] Class Counsel states "there is no California case" that outright states a warranty of habitability claim arises even if the tenant was not around to experience the disruption of hot water and identifies this as a risk for class certification. (*Id.*) The Court is obligated to give heightened attention to the definition of the class when certifying a class action for settlement purposes. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556–557 (9th Cir. 2019). Accordingly, the Court briefly explains why this issue does not defeat commonality. In *Knight v. Hallsthammar*, the California Supreme Court found that "the fact that a tenant was or was not aware of specific defects is not determinative of the duty of a landlord to maintain premises which are habitable." 29 Cal. 3d 46, 54 (1981). Based on this finding, California Courts of Appeals have found that the need for individualized evidence of how each tenant was impacted by the alleged defect does not defeat commonality. *See, e.g., Peviani v. Arbors at California Oaks Prop. Owner, LLC*, 62 Cal. App. 5th 874, 894 (2021).

### b.    Effectiveness of Distributing Relief

The Class Members with mailing addresses on file will receive their settlement payment checks via physical mail. (*See* Fin. App. Mot. at 16.) The remaining Class Members will receive their settlement payment via an electronic check. (*See id*.) Any unclaimed funds will be submitted to the California Unclaimed Property Fund. (*See id.* at 17.) The fact that Class Members do not need to submit a claim form to be sent their monetary damages weighs in favor of final approval. *See Jackson v. Fastenal Co.*, 2021 WL 5755583 at \*11 (E.D. Cal. Dec. 3, 2021) (finding "the proposed method of distributing relief is effective, and weighs in favor of a finding that the settlement agreement is fair, reasonable and adequate" where the class members did not have to file a claim).

### c.    Terms and Timing of Proposed Attorneys' Fees

As explained, *see infra* pages 11–13, the requested attorneys' fees are reasonable given that they align with the presumptive 25% benchmark in the Ninth Circuit. Further, the Settlement Administrator will pay the awarded attorneys' fees to Class Counsel within thirty days of the date on which Defendants have paid the full Settlement Fund to the Settlement Administrator. (*See* Settlement Agreement ¶ 8.1.) Thus, the terms and timing of the attorneys' fees weigh in favor of final approval. *See Lusk v. Five Guys Enters. LLC*, No. 1:17-CV-0762 JLT EPG, 2023 WL 4134656, at \*17 (E.D. Cal. June 22, 2023) ("Because Class Members will receive their shares shortly after the funds are received—and Class Counsel will also be paid after final approval—the timing of the payments does not weigh against approval.").

### d.    Any Agreement Under Rule 23(e)(3)

Under Rule 23(e)(3), "parties seeking approval must file a statement identifying any agreement made in connection with the proposal." The Parties have not identified any such agreement. (*See generally* Fin. App. Mot.) Thus, this factor does not impact granting final approval.

/ / /

/ / /

25-CV-622 TWR (VET)

### 4.    *Equitable Treatment Between Class Members*

As explained in the Court's Preliminary Approval Order, (*see* Prelim. App. Order at 11), given the higher volume and duration of interruptions in the Winter 24-25 period, the Court does not find the additional compensation for the Winter 24-25 Subclass is preferential treatment.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits.") (citation omitted).

### D.    *Relevant Hanlon Factors*

#### 1.    *Extent of Discovery and Stage of the Proceedings*

This action settled approximately one year after the Complaint was filed.  (*See* Docket.)  Prior to settlement via a mediator's proposal, the Parties participated in an Early Neutral Evaluation and engaged in "substantial discovery review and fact investigation." (Fin. App. Mot. at 11.)  Specifically, Class Counsel, with the assistance of other document reviewers, "reviewed over 14,000 pages of work orders, invoices, vendor emails, tenant complaints, and internal emails from which he built a comprehensive timeline of shutoffs, outages, and interruptions during the Class Period and damages calculations." (*Id*. at 12.) Because the Parties participated in thorough discovery, an Early Neutral Evaluation, and a fulsome mediation, this factor weighs in favor of final approval.

#### 2.    *Experience and Views of Counsel*

Class Counsel asserts that they "have a thorough understanding of the facts and legal issues involved in this Action and a wealth of experience with settling consumer class actions." (Fin. App. Mot. at 22).  Class Counsel believe this Settlement is "in the best interest of Settlement Members." (*Id*.)  Class Counsel's favorable view of this settlement weighs in favor of final approval.

#### 3.    *Reaction of the Class Members*

There were zero objections to this settlement and five opt-outs.  (*See* Fin. App. Mot. at 22; ECF No. 28 ("Suppl.") at 1.)  Thus, the overall reaction of the Class Members is

25-CV-622 TWR (VET)

favorable and weighs in favor of final approval. *See Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1040 (S.D. Cal. 2017) ("Thus, as a purely numerical observation, the overwhelming positive response to the Settlement strongly supports final approval.").

### E.    Conclusion

Because the relevant factors weigh in favor of granting final approval, the Court **GRANTS** the Unopposed Motion for Final Approval and **FINALLY APPROVES** the Settlement Agreement under Federal Rule of Civil Procedure 23(e) as fair, reasonable, and adequate.

### MOTION FOR ADDITIONAL SETTLEMENT ADMINISTRATOR COSTS

Plaintiff requests the Court approve $23,029.40 of Settlement Administrator costs to be deducted from the Settlement Fund. (*See* Fin. App. Mot. at 25.) This is a $849.40 increase from the amount approved on preliminary approval based on the Settlement Administrator's unanticipated task of emailing Class Members to obtain their mailing address. (*See id.*) Because this is a small increase that does not change the Court's analysis, the Court **APPROVES** $23,029.40 in Settlement Administrator costs.

### MOTION FOR ATTORNEYS' FEES

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, Class Counsel requests 25% of the Settlement Fund in attorneys' fees and $12,535.20 in costs. (*See* Fee Mot. at 4, 22.)

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth*, 654 F.3d at 942. But, in doing so, courts must exercise their discretion to select a calculation method that will achieve a reasonable result. *Id*. A court can demonstrate the reasonableness of a calculation method by "conducting a cross-check using the other method." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949.

The Court finds it appropriate to employ the percentage-of-recovery method to award attorneys' fees and crosscheck the amount with the lodestar method. Class Counsel's request for 25% of the common fund aligns with the Ninth Circuit's presumptively reasonable benchmark for common fund cases. *See In re Bluetooth*, 654 F.3d at 943; *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 570 (describing the 25% benchmark in percentage of recovery cases as a "rough approximation of a reasonable fee"). But the "25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Some cases will justify a higher percentage while other cases will justify a lower percentage. *See id.*

In determining whether the 25% benchmark is appropriate, courts may consider (1) the extent to which class counsel achieved exceptional results for the class, (2) whether the case was risky for class counsel, (3) whether counsel's performance generated benefits beyond the cash settlement fund, (4) the market rate for the particular field of law (in some circumstances), (4) the burdens class counsel experienced while litigating the case (*e.g.*, cost, duration, foregoing other work), and (5) whether the case was handled on a contingency basis. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954–955. Class Counsel bases their request for 25% in attorneys' fees on (1) an "excellent result for the Class," (2) the risk of non-recovery, (3) the contingent nature of the representation, (4) the quality of work, and (5) the awards in similar cases. (Fee Mot. at 5.) Based on the contingent nature of the representation and its potential impact on a small firm and the results obtained, the Court finds the presumptive 25% benchmark is appropriate.

Turning to the lodestar crosscheck, Class Counsel states their lodestar is $568,535.00, creating a 1.1 multiplier. (*See* Fee Mot. at 21.) But a portion of the hours Class Counsel includes in their calculation relate to Plaintiff's restraining order proceeding. (*See id.* at 17–18.) Class Counsel argues this is appropriate because the Ninth Circuit has found that work on a separate case is compensable if it is "reasonably necessary to the interests of the client" in the primary litigation. (*Id.* at 17 (quoting *Armstrong v.*

12

*Davis*, 318 F.3d 965, 973 (9th Cir. 2003).)  The Court agrees with this general premise but does not draw the same connection as Class Counsel when comparing the relationship between this litigation and Plaintiff's restraining order.  Class Counsel states that representing Plaintiff in his restraining order proceeding benefited Plaintiff and the Class Members because "Mr. Fogy could have dismissed this Action or withdrawn as the named plaintiff and attempt[ed] to use that as a bargaining chip to persuade Brookfield from further pursuing the restraining order." (Fee Mot. at 18.)  Because the Court is unwilling to litigate the merits or lack thereof in the restraining order proceeding, *see infra* pages 14–15, the lodestar should be calculated without time spent representing Plaintiff in his restraining order proceeding.  Based on the Court's calculation, this results in a lodestar of  $527,082.50, which is a 1.18 multiplier.  The Court does not find that this multiplier makes the 25% in attorneys' fees unreasonable. *See Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1049 (S.D. Cal. 2015) (granting attorneys' fees that represented a 2.80 multiplier based on "the risk of non-payment based on their contingent representation, the favorable results achieved for the Class, the burden on class counsel, and the skill and quality of Class Counsel's work").  Accordingly, the Court **AWARDS** $623,750 in attorneys' fees.

Lastly, Class Counsel requests $12,535.20 in costs.  (*See* Fee Mot. at 22.)  Class Counsel represents that this figure includes filing fees, service, parking for in-person filings, printing costs relating to the restraining order proceeding, data-hosting, document review platform costs, the cost of a deposition transcript order, and the cost of mediation. (*See id.* at 22–23.)  The Settlement Agreement states that Class Counsel will apply to the Court for an award of actual costs incurred, which will cover costs, expenses, and disbursements "incurred by them and their experts, staff, and consultants in connection with the Action." (Settlement Agreement ¶ 8.1.)  A review of the costs incurred illustrates that some of the costs were specific only to Mr. Fogy's restraining order proceeding. Because it is not reasonable to reduce Class Members' awards based on the costs of Mr.

Fogy's restraining order proceeding, the Court deducts the restraining order specific costs and **AWARDS** $12,332.63 in costs.

## MOTION FOR PLAINTIFF'S SERVICE AWARD

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943 (internal quotation omitted). But "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). District courts evaluate proposed awards individually, using relevant factors including, "the actions the plaintiff has taken to protect the interests of the class," "the degree to which the class has benefitted from those actions," "the amount of time and effort the plaintiff expended in pursuing the litigation," and "reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977 (cleaned up and citation omitted). Further, "[t]o determine the reasonableness of an incentive payment, courts consider the proportionality between the incentive payment and the range of class members' settlement awards." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014). In this District, a $5,000 incentive award is presumptively reasonable. *See In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898, at *8 (S.D. Cal. Oct. 30, 2020).

Plaintiff is requesting a $10,000 service award. (*See* Fee Mot. at 23.) Based on Class Counsel's assumed Net Settlement Fund of $1,825,685.40, a $10,000 service award represents 3642% of what the Settlement Class Members will receive and 1189% of what Winter 24-25 Subclass Members will receive. (*See* Fin. App. Mot. at 4; Suppl. at 1.) Plaintiff justifies this request based on the "substantial risk Mr. Fogy took on in filing the Action and the personal ramifications he suffered that merit the requested award." (Fee Mot. at 23.) Specifically, Plaintiff alleges he suffered retaliation from Defendants when they sought a "workplace violence restraining order against Mr. Fogy on behalf of a

25-CV-622 TWR (VET)

Vantage Pointe staff member in San Diego Superior Court, alleging Mr. Fogy had engaged in harassing behavior toward the employee." (*Id.* (citing Suhr Decl. ¶ 12).)

Defendants do not oppose the $10,000 request but argue that the Court "should not accept Plaintiff's unsupported narrative that the [Temporary Restraining Order] Proceeding was filed as retaliation for this Action." (ECF No. 27 ("Resp.") at 3.)[2] While courts have found that retaliation—risked or actualized—can be a justification for a service award, the Court is unwilling to litigate whether Defendants' act of seeking a workplace violence restraining order was an act of retaliation or a legitimate response to Plaintiff's behavior. Further, the cases Plaintiff cites to are distinguishable. *See Huynh v. Hous. Auth. of Cnty. of Santa Clara*, No. 14-CV-02367-LHK, 2017 WL 1050539, at *8–*9 (N.D. Cal. Mar. 17, 2017) (awarding one $10,000 service award and four $5,000 service awards and reasoning that the first named plaintiff receiving the $10,000 award faced a higher risk of retaliation and embarrassment when the litigation involved disclosing "potentially embarrassing details regarding physical and mental disabilities and financial status" and retaliation that "could have left them homeless"); *see also Bailey v. Kinder Morgan G.P., Inc.*, No. 18-CV-03424-TSH, 2020 WL 5748721, at *8–*9 (N.D. Cal. Sept. 25, 2020) (awarding a $10,000 service award in a wage and hour action where the plaintiff faced reputational risk in bringing suit). Accordingly, the Court will consider whether the requested service award is warranted based on Plaintiff's work on this case.

Plaintiff estimates that he spent 54 hours on this action. (*See* ECF No. 25-10 ("Fogy Decl.") ¶ 3.) However, five of these hours were dedicated to "attending the restraining order hearing" and eight hours were spent "gathering evidence, making in-person filings, reviewing filings, and conferencing with my counsel in relation to the restraining order

---

[2]    As aptly stated by Class Counsel, "there are two vastly opposing sides to this story." (Suppl. at 2.) Defendants assert that the employee at issue "declared under penalty of perjury that Mr. Fogy called him a 'dickhead,' stated that he looked like a 'fucking pedophile,' [and] made a threatening 'throat slash' gesture directed at [the employee] through the leasing office window in plain view of tour guests." (Resp. at 4.) Plaintiff maintains that he "never yelled or screamed at [the employee] or made any threatening gesture towards him." (Suppl. at 2.)

25-CV-622 TWR (VET)

proceeding." (*Id.*)    Accordingly, it appears that Plaintiff spent 41 hours gathering evidence, conferring with counsel, helping with filings, assisting with discovery, and attending the mediation for the instant action. (*See id.*)    While the Court recognizes Plaintiff's significant work on this case, the Court nevertheless finds the requested award is grossly disproportionate to the average sum the unnamed Class Members will recover. As such, the Court exercises its discretion and reduces Plaintiff's proposed service award to $7,000. *See Wightman v. Cobham Advanced Elec. Sols. Inc.*, No. 21-CV-1784 TWR (DEB), 2024 WL 5706069, at *19 (S.D. Cal. Sept. 6, 2024) (recognizing the plaintiff's "significant service to the Class" but reducing the requested service award from $37,500 to $12,000 because the proposed award was "grossly disproportionate" in comparison to the average sum the unnamed class members would recover); *see also Ruiz v. JCP Logistics, Inc.*, No. SACV131908JLSANX, 2016 WL 6156212, at *11–12 (C.D. Cal. Aug. 12, 2016) (reducing a service award from $10,000 to $6,000 when the plaintiff spent "little more than 40 hours" on the case, the total settlement amount was less than $1 million, and the average per capita individual settlement payments amounted to only $734.25). Accordingly, the Court **AWARDS** Plaintiff $7,000 as a service award.

<b>CONCLUSION</b>

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Court **FINDS** the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are satisfied and **CERTIFIES**, for the purposes of settlement only, the following classes:

   i. The Settlement Class: All Tenants who resided at Vantage Pointe at any time between February 10, 2021, and the date of Preliminary Approval.

   ii. The Winter 24-25 Subclass: All Tenants who resided at Vantage Pointe at any time between November 1, 2024, to February 28, 2025.

   For both the Settlement Class and the Winter 24-25 Subclass, the term "Tenant" is defined as "any person who (1) signed a lease for an apartment at Vantage Pointe, and (2) resided in an apartment at Vantage Pointe for which they signed a lease."

25-CV-622 TWR (VET)

The Settlement Class includes the Winter 24-25 Subclass. Both the Settlement Class and the Winter 24-25 Subclass exclude the Released Parties and all persons who filed a timely and valid Opt-Out Form.

2. The Court **GRANTS** the Unopposed Motion for Final Approval and **FINALLY APPROVES** the Settlement Agreement under Federal Rule of Civil Procedure 23(e) as fair, reasonable, and adequate.

3. The Court **AWARDS** Class Counsel 25% in attorneys' fees and $12,332.63 in costs.

4. The Court **AWARDS** Plaintiff $7,000 as a service award.

5. The Court **GRANTS** the Motion for Settlement Administrator costs of $23,029.40.

6. As agreed by the Parties, the Honorable Magistrate Judge Valerie E. Torres will **RETAIN** jurisdiction.

7. The Clerk of the Court **SHALL ENTER** final judgment.

Dated:  July 13, 2026

_____
Honorable Todd W. Robinson
United States District Judge

17

25-CV-622 TWR (VET)